IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MEIKA DESEAN BRITTON**                                                          **PLAINTIFF**

**v.**                                                                      **No. 3:16CV84-MPM-RP**

**SOUTHAVEN POLICE DEPARTMENT, ET AL.**                                  **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Meika DeSean Britton, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff, who was a parolee at the time, alleges that the defendants searched his cellular telephone without probable cause. The defendants have moved for summary judgment, and the plaintiff has responded. The plaintiff has filed a cross-motion for summary judgment, to which the defendants have not responded. The matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted; the plaintiff's motion for summary judgment will be denied, and judgment will be entered for the defendants in all respects.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan,* 497 U.S. at 888. In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the*

*record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## Undisputed Material Facts

On May 5, 2011, Britton pled guilty to the charge of Child Exploitation and was sentenced to serve five years in the custody of the Mississippi Department of Corrections, followed by ten years of post-release supervision under the MDOC. Doc. 63 at 5. Britton was incarcerated until December 2015. On March 16, 2016 a police report was filed by an individual concerned that Britton had inappropriate contact with his 14 year old daughter. *Id.* at 9. Detective Brannon Rushing of the Southaven Police Department asked the parent for permission to use the daughter's phone and to pose as the daughter to communicate with Britton, and the parent and the minor consented. *Id.* at 11.

After beginning his investigation, Detective Rushing discovered Britton was a registered sex offender, and was currently under supervision with MDOC for a ten year period, reporting to Probation Officer Frank Caswell. *Id.* On March 22, 2016, a juvenile female told Rushing that Britton had given liquor to minor children present at a gathering. Doc. 77 at 16. After several days of communicating, Detective Rushing arranged a meeting with Britton via his probation officer, Frank Caswell. *Id.* at 11. On March 24, 2016, Britton met with Detective Rushing and Probation Officer Caswell at the MDOC office in Hernando, Mississippi. *Id.* During the interview, Probation Officer Caswell asked Britton to produce his phone, and Britton stated he did not want Caswell to look in the phone and began to press buttons on the phone. *Id.* Detective Rushing, worried that Britton could be deleting incriminating evidence, took the phone for evidentiary purposes. *Id.* at 11-12. Detective

Rushing informed Britton he could pick up a receipt for the seized property at the Southaven Police Department. *Id.*

On the same date, March 24, 2016, Detective Rushing applied for and obtained a search warrant for the contents of the phone. *Id.* at 13. A forensic analysis was then performed on the phone and its contents extracted. *Id.* at 15. On March 28, 2016 Britton was charged and arrested for Child Exploitation and Contributing to the Delinquency of a Minor. *Id.* at 16-19. On April 4, 2016, an Affidavit and Warrant were filed for Violation of Post Release Supervision due to the new charges. *Id.* at 24-25. Following a revocation hearing, the Circuit Court of DeSoto County, Mississippi, held that Britton had violated the terms of his supervised release, and imposed the remaining ten years of his sentence to be served in the custody of the Mississippi Department of Corrections.

Britton's version of the facts in this case differs from the defendants' only slightly. He notes insignificant differences (less than 30 minutes) in the timing of events surrounding his questioning and the seizure of his phone. He also alleges that, when he entered the Hernando building for questioning, he did not have his phone and went to retrieve it only when Caswell and Rushing requested a list of phone numbers. He also seems to dispute whether he was pushing keys on his phone at the time Detective Rushing seized it.

**Discussion**

As discussed below, the plaintiff's case must be dismissed for a variety of reasons. First, as to his claims against Mississippi Department of Corrections personnel, he did not, prior to filing suit, exhaust the grievance process through the Administrative Remedy Program the State has adopted. Second, the plaintiff's claim fails on the merits, as the defendants had ample justification for seizing his phone and searching it for evidence of improper communication with minors. Third, as Bonita Clark had no direct involvement in the seizure and search of the plaintiff's cellular phone, he has been

sued her solely in her capacity as supervisor, and a plaintiff cannot sustain a claim under 42 U.S.C. § 1983 based upon a *respondeat superior* theory.

**Exhaustion of Administrative Remedies**

Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or

otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir.Nov. 6, 2000). On September 19, 2010, the ARP process was changed from a three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss.May 29, 2013). The adjudicator screens the grievance and determines whether to accept it into the ARP process. *Id*. If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id*. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*. The inmate may exhaust the administrative remedy process if he complies with its requirements but the Mississippi Department of Corrections takes more than 90 days to complete it:

> The ARP also provides that "[n]o more than ninety (90) days from initiation to completion of the process shall elapse, unless an extension has been granted" and that

- 8 -

> "expiration of response time limits without receipt of a written response shall entitle
> the offender to move on to the next step in the process."

*Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004).

This case must be dismissed because Mr. Britton did not exhaust his administrative remedies *prior to* filing the instant suit – as required under the Prison Litigation Reform Act. 42 U.S.C. §1997e(a). The seizure of Mr. Britton's cellular phone occurred on March 24, 2016. He filed the instant suit on May 9, 2016; however, the grievance process was not complete until June 9, 2016, the date that Christy Gutherz, Deputy Commissioner of Community Corrections, responded to the grievance through the United States Postal Service.[1] Thus, Britton exhausted his administrative remedies, but did so a month later. Even assuming Mr. Britton filed his grievance on March 24, 2016, the date of the seizure, the 90-day period to complete the grievance process would have expired on June 22, 2016 – which is still after Britton filed this suit. Thus, the plaintiff's claims against the Mississippi Department of Corrections defendants, Frank Caswell and Bonita Clark, must be dismissed for failure to exhaust administrative remedies.

**Britton's Claims Fail on the Merits**

Mr. Britton argues that the confiscation of his phone under the circumstances of this case constitutes a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. As discussed below, however, the seizure was reasonable. The Fourth Amendment is brief:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be seized.

---

[1] It appears that Ms. Gutherz did not follow the normal protocol in processing the grievance regarding the conduct of defendants Caswell and Clark, as she did not send the grievance first to the Administrative Remedy Program coordinator. The court will assume, without deciding, that the grievance process was completed by Ms. Gutherz's response.

U.S. Const. am. 4.  It is also vague, which has led to its litigation in tens of thousands of cases during the course of over 200 years of United States jurisprudence.  Determining whether a search or seizure is "reasonable" is nearly always the focus of a Fourth Amendment inquiry.  The Framers did not, however, define "reasonable" in the Constitution, which is why so many courts over the centuries have struggled with the application of Fourth Amendment principles.  Another reason is that the Framers did not define "probable cause."

Normally, a law enforcement officer may search or seize a criminal suspect only if the officer has "probable cause" to do so.  The probable cause test:

> is an objective one; for there to be probable cause, the facts must be such as would warrant a belief by "a prudent man," "a man of reasonable caution," or "a reasonable discrete and prudent man."

§ 3.3(b) Nature of probable cause, 2 Crim. Proc. § 3.3(b) (4th ed.) (internal citations omitted).  However, the test for search and seizure involving parolees is less stringent, requiring only "reasonable suspicion," a lesser showing than "reasonable belief."  *United States v. Knights*, 534 U.S. 112, 122, 122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001).  The "warrantless search of [a parolee], supported by reasonable suspicion and authorized by a condition of probation, [is] reasonable within the meaning of the Fourth Amendment."  *Id*.  The Fifth Circuit, relying on *Knights,* expanded that rule, holding that, upon reasonable suspicion, a probation officer may conduct a warrantless search of a parolee even when such searches are neither specifically authorized by a condition of probation nor based on an explicit state regulation.  *United States v. Keith*, 375 F.3d 346, 350 (5th Cir. 2004).  A warrantless search of a parolee or his home based upon reasonable suspicion of a probation violation is permissible as long as such searches have been sustained by the courts of the state of conviction.  *Id*.  The Mississippi Supreme Court and the Mississippi Court of Appeals have upheld such searches.

In *Barlow v. State*, law enforcement officers received information provided through anonymous tips that Barlow and an associate were in possession of drugs and that they could be found in a certain area. *Barlow v. State*, 8 So. 3d 196, 199 (Miss. Ct. App. 2008). The officers then arrested Barlow at a roadblock set up specifically to capture him. *Id.* Barlow argued that the officers did not have probable cause to stop and arrest him without a warrant, but the Mississippi Court of Appeals disagreed:

> [I]n *Robinson v. State,* 312 So.2d 15, 18 (Miss. 1975), the Mississippi Supreme Court concluded that "courts generally hold that although an inmate is released on parole, the parole authorities may subject him, his home and his effects, to inspection and search as may seem advisable to them." This issue lacks merit.

*Barlow v. State*, 8 So. 3d 196, 202 (Miss. Ct. App. 2008). In reaching this decision, the Mississippi Court of Appeals relied upon the Supreme Court's holding in *Samson v. California*:

> [P]arolees are on the "continuum" of state-imposed punishments. [*Knights,* 534 U.S. at 119], 122 S.Ct. 587, 151 L.Ed.2d 497 (internal quotation marks omitted). On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, "parole is an established variation on imprisonment of convicted criminals.... The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence." *Morrissey* [*v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598 33 L.Ed.2d 484, 492 (1972) ]. "In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements."

*Samson v. California,* 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). Thus, Mississippi courts have held that parolees are subject to warrantless searches based upon reasonable suspicion of a parole violation.

Britton claims that Detective Brannon Rushing and Probation Officer Frank Caswell, without a warrant, seized his cellular phone without legal authority to do so. Britton is mistaken, as Rushing and Caswell had more than ample justification to seize his phone. As set forth above, a father had observed his 14-year-old stepdaughter's communications with Britton, who was 45 years old at the time. Britton had asked her to come babysit for him, requested a photograph of her, and told her that

her "short friend was cute." He also asked about one of the young girl's friends who liked black guys, describing the attraction as "jungle fever." The girl's father was clearly concerned about the inappropriate nature of the communications: repeated efforts to have his young daughter come to Britton's home, his request for a photograph of her, the discussion of his attraction to the young lady's friend, and sexual innuendo regarding another of her minor female friends. Based on this information, Detective Rushing conducted an investigation, communicating with Britton while posing as the young girl. At an interview set up by Frank Caswell, Britton's probation officer, Britton refused to surrender his cellular phone for inspection, as he is required to do under Mississippi law. It was at this point that Detective Rushing seized Britton's phone.

Unlike the law enforcement officers in *Barlow*, Officer Caswell and Detective Rushing had far more than anonymous tips regarding Mr. Britton's alleged violation of the terms of his supervised release; they had a concerned father who had seen inappropriate text messaged between a teenaged girl and Britton – a sex offender previously convicted of child exploitation. This information, coupled with Rushing's continued investigation, provided ample information to establish reasonable suspicion that Britton was violating the terms of his supervised release. In addition, the court cannot help but to note, as did both Caswell and Rushing, that shortly after his release, it appears Britton had returned to the very type of behavior that led to his 2011 conviction in the first place. In his 2011 state court criminal proceeding, Britton entered an *Alford* plea to the charge of child exploitation, acknowledging that the State could prove, beyond reasonable doubt, that he had solicited a child to make a "masturbation video":

> [The State] then detailed the evidence it would offer to show Britton had solicited a child to make a "masturbation video." The proffered proof included a forensic computer examiner's testimony about messages sent by Britton over a computer network soliciting the minor to depict sexual acts for another viewer. The State also described Britton's videotaped confession during which he admitted soliciting a minor on another person's behalf.

*Britton v. State*, 130 So. 3d 90, 93 (Miss. Ct. App. 2013). Indeed, it appears that Britton continued his efforts to contact the young girl – even after he was aware that the police had become involved. This is astonishing behavior for someone on supervised release for a sex crime involving children. Clearly, Britton's obvious and strong predilection for convincing minors to record sexual acts on video, as well as his opportunity to delete potentially incriminating data from his cell phone, pushed the information at Caswell and Rushing's disposal beyond "reasonable suspicion" into the realm of "reasonable belief," which is sufficient to provide probable cause to seize the phone, whether from a parolee or otherwise.

In any event, as Mississippi law permits probation and parole officers to subject "[a parolee,] his home and his effects, to inspection and search as may seem advisable to them," *Barlow*, 8 So. 3d at 202, the seizure and search of Britton's cell phone was permissible under both state and federal law. *United States v. Keith*, 375 F.3d 346, 350 (5th Cir. 2004). This is especially true when, as here, an officer is concerned that a suspect will destroy evidence – and the officer secures a search warrant immediately after the seizure. For these reasons, the plaintiff's sole claim in this case – violation of the Fourth Amendment prohibition against unreasonable searches and seizures – is without substantive merit.

*Supervisor Liability*

Mr. Britton has not alleged that defendant Bonita Clark was personally involved in the seizure and search of his cellular phone; as such, his claim against her must be based upon her position as a supervisor of Officer Frank Caswell. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally

involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

Though failure to train employees may rise to the level of an official government policy – giving rise to a claim under 42 U.S.C. § 1983, such claims are a rarity:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359–60, 179 L. Ed. 2d 417 (2011).

In this case, the plaintiff does not allege that Bonita Clark had any personal involvement or was causally connected to the incident in any way. As such, this case should be dismissed as to

Bonita Clark for failure to state a constitutional question.

## Conclusion

For the reasons set forth above, the plaintiff's sole remaining claim – that the defendants violated his right to be free from unreasonable searches and seizures – is without merit and will be dismissed. In addition, the plaintiff failed to exhaust administrative remedies as to his claims against the two Mississippi Department of Corrections defendants, Frank Caswell and Bonita Clark. Further, Ms. Clark will be dismissed from this case because she had no direct involvement in the events giving rise to this case. Thus, the motions by the defendants for summary judgment will be granted; the plaintiff's motion for summary judgment will be denied, and judgment will be entered in favor of the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of May, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**